[Crim. No. 4808.    In Bank.    Dec. 29, 1947.]

In re THOMAS HENRY McMONIGLE, on Habeas Corpus.

Harmon D. Skillin, under appointment by the Supreme Court, for Petitioner.

Fred N. Howser, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SPENCE, J.—Petitioner was found guilty of the murder of Thora Chamberlain, a 14-year-old school girl. He is confined in the State Prison of San Quentin under a sentence of death following the jury's return of its verdict without recommendation. Upon automatic appeal to this court (Pen. Code, § 1239(b)), the judgment of conviction was affirmed. (*People* v. *McMonigle*, 29 Cal.2d 730 [177 P.2d 745].) The cited opinion sets forth in considerable detail the facts surrounding the commission of the offense charged, and it would serve no purpose to narrate those matters again here. At petitioner's request, the trial court appointed counsel to conduct petitioner's defense there, and this court appointed other counsel to represent petitioner on the appeal.

Petitioner now attacks the propriety of the judgment of conviction in this proceeding on habeas corpus. This is the third of a series of such petitions filed by petitioner in *propria persona* in the state and federal courts since this court's affirmance of the judgment against him on February 18, 1947. (*People* v. *McMonigle, supra,* 29 Cal.2d 730.) The first petition (Crim. No. 4787), which was made on March 5, 1947, and which was brief, was concerned in the main with a reargument of the evidence and with an attack upon the procedure of respective appointed counsel in representing petitioner both at the trial and upon the appeal. After due consideration, that petition was denied by this court on March 17, 1947. Petitioner then filed a second, and a considerably more lengthy, petition for a writ of habeas corpus, choosing for his forum the United States District Court for the Northern District of California, Southern Division (No. 27145-R). That petition was denied on May 28, 1947, with the court stating: "There are no exceptional circumstances presented

here which would justify a departure from the settled rule and practice that even where a defendant has exhausted his state remedies, the United States District Court will ordinarily not interfere by habeas corpus, but will leave him to take his case direct to the United States Supreme Court.'' Petitioner has now returned to this court with the present petition. It contains the same allegations presented in the petition to the federal court, including some of the same allegations and argument found in the prior petition to this court. While such third petition is replete with matters which have no relevancy or materiality in a proceeding for habeas corpus, nevertheless a writ of habeas corpus was issued by this court on June 9, 1947, in order to give petitioner full opportunity to present any matters which might possibly entitle him to any relief in this proceeding. The following day this court, at petitioner's request, appointed counsel in the person of Mr. Harmon D. Skillin to represent petitioner. On the day designated for the return to the writ before this court, June 17, 1947, petitioner was present at the hearing; and he then stipulated, through his counsel, that the following issues were the sole matters which he wished this court to consider, and that in the event a referee were appointed, the evidence to be taken might be limited to those disputed points:

''1. Whether petitioner was held incommunicado for seven or more days by agents of the Federal Bureau of Investigation during which time he was beaten by one of said agents, and during which time and at other times he was informed by another of said agents that 'it would be better for him to confess.'

''2. Whether petitioner informed E. J. Connelley [an F. B. I. agent] that the body at the precipice in San Mateo was that of a colored girl and whether on January 3, 1946, petitioner pointed out and showed said body to the Sheriff of Santa Cruz County and to his chief deputy. Also, as to whether said chief deputy sheriff testified at the trial of petitioner that he found no body on said date at said place.

''3. Whether during the trial of said petitioner witnesses were called to testify by the prosecution who were not sworn.

''4. Whether petitioner ever received a copy of the indictment or whether petitioner was arraigned prior to the return of said indictment; also, whether the official records of the court and clerk of said court were at any time altered or tampered with.

"5. Whether petitioner was (a) deliberately and knowingly misadvised as to the law by his counsel, appointed to represent him; (b) threatened with bodily injury by said counsel; and (c) whether said counsel wilfully refused to subpoena witnesses suggested by petitioner to testify in his behalf.

"6. Whether the trial court tolerated and allowed a serious disturbance in the nature of constant gun fire directly outside of the courtroom during said trial."

While this court had doubt concerning the materiality of some of the issues which petitioner desired to have heard before a referee, this doubt was resolved in petitioner's favor, and Superior Court Judge Samuel F. Finley was appointed as referee to take evidence on all designated matters. Hearings were held on eight separate days, three of which were devoted exclusively to taking the testimony of petitioner. Toward the end of his testimony on the third day, petitioner submitted a list of some 166 persons whom he proposed to call as witnesses, including persons of prominence such as Governor Earl Warren, Attorney General Frederick N. Howser, United States District Judge George B. Harris, San Francisco District Attorney Edmund Gerald Brown, Eleanor Roosevelt, James Roosevelt, Herbert Hoover, and certain Hollywood motion picture actresses. Following petitioner's outline of what he expected to prove by the presentation of such witnesses, it was determined that but 29 of the 166 named persons could give any testimony which would have any possible bearing upon the issues involved, and accordingly all of said 29 persons were called to testify. At the conclusion of the eighth day of the hearing, petitioner was asked whether he had any further testimony, and his counsel answered, "Nothing further." The referee then allowed time to opposing counsel to submit memoranda in connection with the proposed findings to be made. Such memoranda were filed, and the referee thereupon made the following findings:

*As to Issue No. 1, supra:*

"The petitioner was not held incommunicado for seven or more days by agents of the Federal Bureau of Investigation; during no time was he beaten by any one of said agents; during no time was he informed by another of said agents that 'it would be better for him to confess.'

"That petitioner was taken into custody by agents of the Federal Bureau of Investigation about 2:30 A. M. on December 6, 1945, and remained in custody of the Bureau until 4:55 P. M. December 15, 1945, at which time he was delivered into the custody of Sheriff William J. Emig of Santa Clara County. That on December 6, 1945, when taken into custody he was in a semiconscious condition brought about by an overdose of sleeping pills. (Tr. p. 25, lines 19 to 24.) He was first taken to the Bureau headquarters at 111 Sutter Street in San Francisco where at 3:30 A. M. he was examined by Dr. Edmund Butler, a licensed physician and surgeon practicing in San Francisco. Upon Dr. Butler's advice petitioner was taken to the Franklin Hospital in San Francisco where he was given treatment for his condition. He was kept at the Franklin Hospital until 1:20 P. M. on December 8, 1945, when he was returned, as recovered, to the Bureau headquarters at 111 Sutter Street. That by four written documents voluntarily signed by petitioner on December 9, 10, 12 and 14, respectively, he voluntarily agreed and consented to remain in physical custody of agents of the Bureau from December 8, 1945, to and including December 17, 1945. That during the time he remained in custody of said Bureau he was not beaten nor was he informed that 'it would be better for him to confess.' He was not held incommunicado. He made no attempt to communicate with his wife, relatives, friends, or any attorney. He did not request the Assistant Director of the Bureau or any agent thereof to contact anyone on the outside for him nor did he request any facility for this purpose."

*As to Issue No. 2, supra:*

"That petitioner did inform E. J. Connelley [an F. B. I. agent] that a body at a precipice in San Mateo was that of a colored girl; that petitioner did not on January 3, 1946, or at any other time point out and show said body or any body to the Sheriff of Santa Cruz and to his chief deputy; that the name of said deputy was and is Lowell M. Rountree; that at the trial of petitioner said deputy Rountree did testify that he found no body on said date at said place. (Trial Tr. p. 673, lines 12 to 15.) The date appears (Trial Tr. p. 670, lines 14 to 17.) That said deputy was referring to the body of Thora Chamberlain and not to the body of a colored girl or any other body (Trial Tr. p. 673, lines 12 to 14); that said deputy did not testify at the trial with regard to the body of a colored girl or any other body excepting that of Thora Chamberlain."

*As to Issue No. 3, supra:*

"That during the trial of petitioner no witnesses were called to testify by the prosecutor or otherwise who were not sworn."

*As to Issue No. 4, supra:*

"That petitioner did receive a copy of the indictment by delivery thereof to his counsel at the time of petitioner's arraignment; that petitioner was not arraigned prior to the return of said indictment; that the indictment was returned by the Grand Jury of Santa Cruz County to the court on Wednesday, December 19, 1945, at 3:45 o'clock P. M.; that at the time of the return of said indictment a bench warrant was issued by the court for the arrest of defendant; that on Friday, December 21, 1945, at 10:00 o'clock a. m., petitioner was brought into court for arraignment in pursuance thereof and counsel were appointed by the court to represent him; that the arraignment was thereupon continued to Friday, December 21, 1945, at 2:00 o'clock p. m., at which time petitioner received a true copy of said indictment by delivery thereof to his counsel and was arraigned up to the point of plea; that thereupon the arraignment was continued to Friday, December 28, 1945, at 10:00 o'clock a. m.; that at said time and upon request of petitioner's counsel the matter was continued until January 4, 1946, at 10:00 o'clock a. m., at which time petitioner's pleas were entered.

"It is further found that the official records of the court and clerk of said court were not at any time altered or tampered with."

*As to Issue No. 5, supra:*

"That petitioner was not deliberately and knowingly misadvised as to the law by counsel appointed to represent him; that he was not threatened with bodily injury by his said counsel; that said counsel did not wilfully refuse to subpoena witnesses suggested by petitioner to testify in his behalf."

*As to Issue No. 6, supra:*

"That the court did not tolerate and allow any serious disturbance in the nature of constant gun fire directly outside of the courtroom during the trial."

The report and findings of the referee were filed in this court on December 2, 1947. Thereupon the cause was calendared for oral argument on December 17, 1947. Petitioner's

appointed counsel appeared at the scheduled hearing and urged that despite the conflict in the evidence upon all the issues presented to the referee for determination, petitioner's testimony should be accredited rather than that of the numerous opposing witnesses. With that point of challenge on petitioner's behalf, the matter was then submitted for decision by this court.

An examination of the referee's findings shows them to be adverse to petitioner on every issue which might be deemed material in this proceeding; and a reading of the record of the testimony taken before the referee discloses that all of said findings are sustained by overwhelming evidence. It appears unnecessary to summarize in detail the testimony of the numerous witnesses who were called, as that testimony is adequately reviewed in the referee's report and findings. In the main, it need only be said that the sole evidence tending to support any of petitioner's claims was his own testimony, which in every essential aspect was directly contrary to the testimony of all other witnesses.

However, there is one phase of petitioner's claims which requires some additional comment, and that is the relevancy of "Issue No. 2," relating to petitioner's alleged statement to E. J. Connelley, an F. B. I. agent, that "a body . . . of a colored girl" was at the bottom of a precipice in San Mateo County, and that on the occasion of examination of that locale on January 3, 1946, for trace of the body of Thora Chamberlain, petitioner "pointed out" the body of the colored girl to the accompanying police officers. As above recited, the referee found that petitioner had so informed E. J. Connelley as to the colored girl's body—the date being January 18, 1946, according to the testimony of both petitioner and Mr. Connelley—but that neither "on January 3, 1946, or at any other time" did petitioner "point out and show said body or any body to" certain specified officers in charge of petitioner's custody. Here again the evidence sustains the findings, but the materiality of petitioner's claims under "Issue No. 2" is not apparent. Petitioner testified that on January 3, 1946, while on a trip with several officers to a point in San Mateo County near Point Montara, he pointed out to the officers the body of Dorothy Rose Jones, a colored girl. All officers present on that occasion testified to the contrary. It appears, however, that some days after the trip of January 3, 1946, petitioner made the boast that he had killed two colored girls and another white girl besides Thora Chamberlain; that he

offered to show the officers where these other girls were killed and "where one of these girls was placed by me"; that he directed the officers to various points where he claimed the killings took place and stated that he had thrown the body of one of the colored girls over a cliff in San Mateo County. It further appears that despite an intensive search of difficult terrain on the cliffs in San Mateo County, neither the body of Thora Chamberlain nor the body of any other girl, colored or white, was found until after the trial, when in April, 1946, the body of a colored girl was found. But as petitioner had admitted prior to his trial that he had dropped the body of Thora Chamberlain over a 300-foot cliff into the ocean at Devil's Slide in San Mateo County, and as the discovery of Thora Chamberlain's socks on the face of the cliff at that point corroborated his admission, petitioner's boastful claims regarding the murder of other girls and the disposition of their bodies can have no bearing upon any issue which would be material to this discussion.

In the light of these observations, the findings of the referee are adopted as the findings of this court upon the issues designated by petitioner. Before concluding, it appears appropriate to state that an examination of the record upon the appeal and of the record in this proceeding confirms our view expressed in the decision on appeal (*People* v. *McMonigle, supra,* 29 Cal.2d 730, 732) that petitioner "was given a fair trial"; and it further appears that petitioner's rights have been fully protected by able counsel throughout all proceedings, including the trial, the appeal and this proceeding on habeas corpus. The fact remains, however, that petitioner's guilt of the murder of Thora Chamberlain has been proved beyond all reasonable doubt, and we can only conclude that petitioner's successive applications for writs of habeas corpus, based upon wholly unfounded claims, constitute a studied attempt by petitioner, through the use of false allegations, to abuse the processes of the courts in order to obtain an unwarranted delay in the execution of the sentence imposed.

The writ is discharged and petitioner is remanded to custody.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.